**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| GEVORK GOROVICH SEDRAKYAN,<br><br>　　　　　　　　Petitioner,<br><br>　　　v.<br><br>FERETI SEMAIA, et al.,<br><br>　　　　　　　　Respondents. | Case No. EDCV 26-3154-AS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On June 8, 2026, Gevork Gorovich Sedrakyan (A# 071-221-932) ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), seeking release from custody on the ground that his detention violates his Fifth Amendment due process rights. (Dkt. No. 1). On June 15, 2026, Respondents filed an Answer to the Petition, arguing that Petitioner is lawfully detained due to his final removal order and criminal history. (Dkt.

No. 7). Petitioner followed with a Reply in support of the Petition on June 18, 2026. (Dkt. No. 10).

For the reasons stated below, the Petition is DENIED.[1]

**BACKGROUND**

Petitioner, age thirty-nine, is an Armenian citizen who entered the United States as a lawful permanent resident on August 19, 1993, and has resided here since. (See Petition ¶¶ 2, 19-20; Answer at 2, Ex. A). In 2004, he obtained a Permanent Resident Card that was valid until 2014. (Answer at 2, Ex. A at 3).

Since he was about nineteen years old, Petitioner has accrued numerous criminal arrests and convictions. These include (1) an October 2006 arrest for driving without a license, a misdemeanor (Cal. Penal Code § 12500(a)), resulting in conviction; (2) a January 2007 arrest again for driving without a license (Cal. Penal Code § 12500(a)); (3) a September 2009 arrest for grant theft (Cal. Penal Code § 487(a)), burglary (Cal. Penal Code § 459), and forgery of an access card (Cal. Penal Code 484f(a)), resulting in conviction and a sentence to a work program and probation; (4) a March 2011 arrest for possession of concentrated cannabis (Cal. Health & Saf. Code § 11357(a)), driving under the influence of alcohol ("DUI") (Cal. Veh. Code § 23152(a)), burglary (Cal. Penal Code 459), using an access card without consent (Cal. Penal Code §

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3, 4, 8).

2

484e(d)), and forgery of an access card (Cal. Penal Code 484f(a)), resulting in conviction on some charges and a sentence of forty-five days in jail and three years of probation; and (5) an April 2012 arrest for possession of narcotics with intent to sell (Cal. Health & Saf. Code § 11351) and possession of narcotics (Cal. Health & Saf. Code § 11350(a)), resulting in conviction and a sentence of six months in jail and three years of probation. (Answer Ex. A at 4).

After Petitioner's April 2012 arrest, ICE lodged an immigration detainer against him and served him with a Notice to Appear charging him as removable under section 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(C)(i). (Answer Ex. A at 3, 6). On July 23, 2012, he was transferred to ICE custody for removal proceedings. (Petition ¶ 23; Answer Ex. A at 3). On September 5, 2012, he was released from ICE detention on an Order of Release and Recognizance. (Petition ¶¶ 24-25; Answer Ex. A at 3).

In September 2013, Petitioner was arrested for possession of cannabis with intent to sell (Cal. Health & Saf. Code § 11359) and sentenced to two years of probation. (Answer Ex. A at 4-5). A little over two years later, in January 2016, he was arrested for a hit and run with property damage (Cal. Veh. Code § 20002(a)), but he was later granted arrest relief under California Penal Code section 851.93. (Answer Ex. A at 5).

On December 20, 2016, an immigration judge ordered Petitioner removed to Armenia, in absentia. (Petition ¶ 27; Answer Ex. A at 3). Petitioner's failure to appear for the proceeding allegedly was not intentional, as Petitioner had informed his immigration counsel of his change of address and relied on counsel to update the immigration court accordingly, but Petitioner later learned that his immigration counsel had died. (Petition ¶¶ 27-30). As a result, Petitioner allegedly was unaware of the removal order until he tried to renew his permanent resident documentation in 2021. (Id. ¶ 31).

Petitioner had multiple DUI arrests in 2021 and 2022. The first was in January 2021 for DUI (Cal. Veh. Code § 42104) and hit and run with resulting property damage (Cal. Veh. Code § 20002(a)), for which he was convicted and sentenced to probation. (Answer Ex. A at 5). The next occurred in March 2021, for DUI causing bodily injury (Cal. Veh. Code § 23153(a)), for which he again received probation. (Answer Ex. A at 5). He then had another arrest in February 2012 for DUI causing bodily injury (Cal. Veh. Code § 23153(a)), and he received jail time. (Answer Ex. A at 5).

In October 2024, Petitioner was convicted and sentenced to probation for possession of personal identification with intent to defraud (Cal. Penal Code § 530.56(c)(1)), impersonation (Cal. Penal Code § 529(a)), and driving without a license (Cal. Veh. Code § 12500(a)). (Answer Ex. A at 5). He was then arrested again the following March for impersonation (Cal. Penal Code § 529(a)(3)),

4

but was granted relief under California Penal Code section 851.93. (Answer Ex. A at 6).

On May 30, 2026, Petitioner was arrested by Burbank Police Department ("BPD") officers for possession of unlawful paraphernalia (Cal. Health & Saf. Code 11364(a)), for which he was convicted and sentenced to probation. (Answer Ex. A at 6; Petition ¶ 33). The next day, he was taken into ICE custody and transferred to the Adelanto ICE Processing Center.[2] (See Petition ¶ 34; Answer Ex. A at 3-4).

Petitioner has substantial family ties in the United States. (Petition ¶ 21). He assists his mother with transportation, medical appointments, financial obligations, and day-to-day needs. (Petition ¶ 22, Ex. B).

Petitioner is now allegedly "preparing a Motion to Reopen his immigration proceedings based upon lack of notice and ineffective assistance of prior counsel." (Id. ¶ 32).

---

[2] Petitioner alleges that he was "transferred into ICE custody" (from local law enforcement custody) on June 1, 2026 (Petition ¶¶ 33-34), whereas the DHS Form I-213 Record of Deportable/ Inadmissible Alien, dated May 31, 2026, states that ICE was notified of his arrest by the BPD on May 31, 2026, and lodged an immigration detainer against him, but "BPD did not honor the detainer and released [Petitioner] from custody," so ICE Enforcement and Removal Operations ("ERO") Los Angeles Fugitive Operations "encountered and arrested [Petitioner] during a targeted enforcement operation in Burbank," served him with a warrant of arrest, and processed him as a noncitizen subject to a final order of removal (Answer Ex. A at 3-4).

**DISCUSSION**

Petitioner claims he is entitled to release from detention on the ground that ICE re-detained him "without meaningful pre-deprivation process," including an individualized hearing before a neutral decisionmaker. (See Petition at 3, 6-10; Reply at 5-10). Petitioner expressly "does not seek a bond hearing," only immediate release. (Petition at 3). For the reasons stated below, he fails to demonstrate that his detention violated due process or that he otherwise merits release at this juncture.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause requires Respondents to provide him "the opportunity to be heard

6

at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. at 333. To determine what process he is due, the Court considers the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

Petitioner fails to demonstrate that these factors weigh in favor of requiring a pre-deprivation hearing in the circumstances at issue. As to the first factor, Petitioner's private interest in remaining out of custody may be substantial, given that he has resided in the United States since 1993, when he entered with lawful permanent-resident status. But that interest is limited, nonetheless, because for many years Petitioner has been subject to a final order of removal, which was issued in absentia in December 2016, though Petitioner allegedly became aware of it about five years ago, in 2021. Although he is presently seeking to reopen his removal proceedings, that order remains final at this time, and the government generally has the authority to arrest noncitizens

subject to final orders of removal and to detain them for the purpose of effectuating their removal. See, e.g., 8 U.S.C. § 1231(a)(1)-(2), (6); 8 C.F.R. §§ 241.3, 241.4; Zadvydas, 533 U.S. at 701 (holding that six months of detention was presumptively reasonable to effectuate removal of noncitizens subject to final orders of removal).

It is true that Petitioner was previously detained by ICE for about six weeks, and the government chose to release him on his own recognizance in September 2012 (see Petition ¶¶ 23-25; Answer Ex. A at 3), a decision that typically creates "an implicit promise," upon which that individual may rely, that his or her liberty "will be revoked only if he [or she] fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). Here, however, in the nearly fourteen years that followed, Petitioner accrued a final order of removal, along with numerous criminal arrests and misdemeanor convictions for DUI, fraud, and other offenses, including his most recent arrest and conviction, on May 30, 2026, for possession of illegal paraphernalia (Cal. Health & Saf. Code 11364(a)). (See Answer Ex. A at 4-6). These events significantly reduced Petitioner's liberty interest, and justified his re-detention.

As to the second Mathews factor, "the risk of an erroneous deprivation of such interest through the procedures used" was fairly low here because Petitioner was taken into ICE custody immediately following his May 30 criminal arrest and conviction, and he is presently subject to a final order of removal. These facts were easily ascertainable upon his arrest, and they are indisputable - notwithstanding Petitioner's intention to seek to reopen his removal proceedings in immigration court. Thus, providing him with a post-detention hearing would pose only a low or moderate risk of erroneous deprivation of liberty.

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and in "protecting the public from dangerous criminal [noncitizens]," and thus it has a strong interest in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens] will be successfully removed.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). "The Supreme Court has thus specifically instructed that in a Mathews analysis, [courts] 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" Id. (quoting Landon v. Plasencia, 459 U.S. 21, 34 (1982)). "Over no conceivable subject is the legislative power of Congress more complete." Id. (quoting Reno v. Flores, 507 U.S. 292, 305 (1993)).

On balance, the <u>Mathews</u> factors suggest that Petitioner was not entitled to any further pre-deprivation process because his removal order and recent criminal history sufficed as grounds to detain him. Otherwise, as Petitioner was detained only about a month ago, his detention remains presumably reasonable, <u>see</u> <u>Zadvydas</u>, 533 U.S. at 701, and he fails to demonstrate that he merits immediate release or any other relief at this juncture.

**ORDER**

Accordingly, the Court DENIES the Petition.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 30, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

10